David Abrams, Attorney at Law
PO Box 3353 Church Street Station
New York, NY 10008
Tel. 212-897-5821 dnabrams@gmail.com

United States District Court
Eastern District of New York

_____

Joseph Mathieu

               Plaintiff,

                     No.

   - against -

GJ Apex Company LLC         **Complaint**

              Defendant.

_____

Plaintiff, complaining of the Defendant by his attorney, David Abrams, Attorney at Law, respectfully set forth and allege as follows:

**I.   Introduction**

1. This is an action for wages and overtime under the Fair Labor Standards Act and the New York Labor Law. Plaintiff also asserts a claim for failure to provide proper notification under the Wage Theft Prevention Act.

**II.   Parties**

2. Plaintiff Joseph Mathieu ("Plaintiff" or "Mr. Mathieu") is a natural person and is a resident, citizen, and domiciliary of New York.

3. Defendant GJ Apex Company LLC (the "Employer" or "Defendant") is a New York limited liability company with a principle place of business in the State of New York, County of Kings.

### III. Venue and Jurisdiction

4. The Court has subject matter jurisdiction over this matter in that Plaintiff asserts claims under federal law and the remaining claims are part of the same case or controversy.

5. The Court has personal jurisdiction over the Employer in that this matter arises from the Employer's employment of the Plaintiff in New York.

6. Venue is appropriate in that this matter in the Eastern District in that the Employer is located in the Eastern District.

### IV. Background

7. The thrust of Plaintiff's allegations is that (1) he worked for the Defendant as a live-in home health aid; (2) he did not receive sleep or breaks which qualify under applicable standards; (3) the Defendant knew or should have known about this situation; and therefore (4) he is entitled to be compensated in terms of overtime on the basis of a 24 hour day as opposed to the 13-hour day which the Defendant used.

8. From January 2019 until October 2021 the Employer employed Mr. Mathieu as a home health aide who cares for its clients in their homes. Mr. Mathieu performed services exclusively in the City of New York.

9. Mr. Mathieu's job duties while employed by the Employer he was primarily engaged in dressing, grooming, feeding, bathing, toileting, transferring the individuals he cared for. Mr. Mathieu's job duties also included general housework such as sweeping, mopping, dusting, bed making, cleaning refrigerators and ovens, sorting and taking out trash, washing dishes, doing laundry, preparing meals, arranging appointments, and shopping for groceries and other household items. Mr. Mathieu spent at least 20% of his work time performing such general housework.

10. As a home health aide, Mr. Mathieu would work 24-hour "live-in shifts" which required him to be in a patient's home for 24 hours to provide care and household assistance. During these 24-hour shifts, the Employer required Mr. Mathieu to remain in the patient's or patients' home for the entire period. While Mr. Mathieu typically had the opportunity to rest during these 24-hour shifts, Mr. Mathieu had to remain available to the patients and to immediately provide services as needed.

11. When Mr. Mathieu worked such "live-in shifts" he would be paid for only 13 hours. On paper, the Employer expected her to take make meal and sleep breaks for 11 hours for such a shift, however this was just a fantasy. In reality Mr. Mathieu was advised by supervisor Liz at the start of his employment that he would be paid for only 13 hours per day despite working for longer.

12. Mr. Mathieu was paid $216 per day for his work and worked from Sunday at 8am until Thursday at 8am.

13. Mr. Mathieu denies that he was ever able to sleep for 5 hours without interruption or 8 hours total during his shifts.

14. Accordingly, under applicable law, Mr. Mathieu is entitled to compensation based on a 24-hour day as opposed to the 13 hour days for which he was paid. It should also be noted that he did not receive spread of hours pay.

15. Throughout his employment with the Employer, Mr. Mathieu maintained a residence apart from the homes of the patients where he worked. Thus he was not a "residential employee" or a "live-in worker" within the meanings of the applicable regulations: 12 NYCRR 142-3.1(b) and 29 CFR 552.102(a).

16. Additionally, the Employer failed to provide accurate wage notifications. More specifically, the Employer failed to provide Mr. Mathieu with a "Notice of Pay Rate" document as required by Labor Law Section 195(1). In other words, the Employer failed

3

to provide Mr. Mathieu -- at any time -- with a document containing the information required by Labor Law Section 195(1).

17. Further, the Employer failed to provide paystubs to Mr. Mathieu.

**V.      Causes of Action**

Count One: Violation of New York Wage & Hour Law

18. The allegations contained in the preceding paragraphs are incorporated as if restated herein.

19. Plaintiff was an employee of the Employer within the meaning of the New York Minimum Wage Act and accompanying regulations.

20. The Employer was an employer within the meaning of those same regulations in that it employed Plaintiff.

21. The Employer violated the above law and regulations in that it did not pay sufficient minimum wages or overtime premiums or spread of hours pay to the Plaintiff and did not provide Plaintiff with proper paystubs reflecting his hours worked.

Count Two: Violation of the Fair Labor Standards Act

22. The allegations contained in the preceding paragraphs are incorporated as if restated herein.

23. Plaintiff's employment was covered by the Fair Labor Standards Act. More specifically, the Employer's annual sales/revenue was far in excess of $500,000 as evidenced by the fact that the Employer received more than $4 million dollars in PPP disaster relief, which implies an annual payroll(and therefore receipts) in excess of $10 million dollars.

24. Additionally, multiple employees of the Employer regularly used instrumentalities of interstate commerce in connection with their employment. More

specifically, the Employer used telephone service to contact its numerous home health aid employees.

25. Accordingly, Plaintiff's employment was covered by the Fair Labor Standards Act.

26. The Defendant violated the Fair Labor Standards Act in that it did not properly compensate Plaintiff for the overtime hours she worked.

## VI. Anticipated Objections

27. The allegations contained in the preceding paragraphs are incorporated as if restated herein.

28. *The Complaint Fails to Identify a Specific Week in Which Plaintiff Worked Overtime*: This objection is unreasonable since Plaintiff has made a reasonable estimate as to all of the weeks he worked and it is for the Employer to keep track of his specific days and hours. Nevertheless, Plaintiff has a specific recollection of the week in which he worked from September 5, 2021 at 8am until September 9, 2021 at 8 am. In this particular week, the patient he was taking care of uncharacteristically failed to attend Rosh Hashanah services due to concerns over the Coronavirus epidemic. Thus, Plaintiff recalls working some 96 hours in this week.

Thus, Mr. Matthieu alleges that during the week ended September 11, 2022 he worked 4 full day shifts and that for the reasons stated above he worked 24 compensable hours each shift. Therefore, his total working hours for that week were 96 which is made of 40 regular hours and 56 overtime hours. Therefore, given that Mr. Matthieu's per diem rate of pay was $216, Mr. Matthieu worked 12 overtime hours for which he did not receive overtime premiums and an additional 44 hours for which he was not paid any wages at all, let alone overtime premiums.

5

29. *The response to the previous question is totally conclusory. What is the basis for alleging that Plaintiff was not properly compensated for his overtime hours during the week ended September 11, 2021?* To answer this question, one needs to determine what Plaintiff's "regular rate of pay" was. As alleged above, when Mr. Matthieu worked a full day shift, he would be paid for only 13 hours. Thus, for example, for September 6, 2021, Mr. Mathieu was paid $216 which represents slightly more than 13 hours multiplied by the New York minimum wage of $15 per hour, with an additional hour's pay for spread of hours. Dividing $216 by 14 gives a regular rate of slightly more than $15 per hour. If the $216 Mr. Matthieu had received for that day had been intended to compensate him for the full 24 hours he worked, it means that his regular rate was $9 per hour which is less than the New York State minimum wage at the time. It is reasonable to infer and assume at this stage that Mr. Matthieu's regular rate exceeded the New York State minimum wage.

30. *What is the basis for alleging that Mr. Matthieu's pay for a shift compensated him for only 13 hours?* It is a simple matter of multiplying 13 by the applicable State minimum wage and adding an hour for spread of hours, which is $210 -- slightly less than his actual gross pay.

31. *The Complaint does not adequately allege that Defendant failed to pay overtime premiums to Plaintiff for a specific week.* Plaintiff hereby alleges that during the week ended September 11, 2022, he worked 44 overtime hours for which he received no compensation at all, not "straight" time and not overtime premiums. (He worked 40 regular hours for which she received proper compensation and 12 overtime hours for which he received "straight" time.

32. *The Plaintiff has provided specific details as to only one week. The Complaint should do so for all weeks.* It is difficult to do that without full records, however the

6

calculation is very straightforward since Plaintiff is alleging that for each shift he worked he was compensated with "straight time" pay for 13 hours of work and not compensated at all for 11 hours of work.

The foregoing is not 100% accurate since there were weeks where Plaintiff worked for only part of a shift. Plaintiff is happy to produced a detailed chart showing the exact number of unpaid straight and overtime hours for each week once the Defendant makes a full production of payroll records.

33. *The Complaint does not specify which notifications under the Wage Theft Prevention Act were Deficient and When the Were Provided*. Plaintiff never received paystubs thus there is a violation for each week of employment.

34. *The Complaint does not plausibly allege that Defendant knew or should have known about Plaintiff's hours of work*. Plaintiff hereby alleges that the time of hire January 2019, he was specifically advised by one of the women conducting his interview and orientation that he would be paid for 13 hours but they were expected to be available to the patient at any time day or night, i.e. that they would not necessarily receive an uninterrupted break. Additionally, he was similarly advised by Liz as alleged above.

35. *The Complaint has some other Deficiency*. It is difficult to anticipate every last objection that a creative person could make to this Complaint. There are always more details which could be added. To the extent that anything important is missing, Plaintiff seeks leave to amend.

VI.     **Demand for Relief**

WHEREFORE Plaintiff demands judgment against the Employer in the amount of his unpaid back wages, overtime, lost wages and liquidated damages, compensatory damages, and punitive damages, in an amount not more than $500,000.00 which includes attorneys fees and costs, and such other and further relief that the Court deems just.

                                                      Respectfully submitted,

                                                      David Abrams
                                                       Attorney for Plaintiff
                                                    PO Box 3353 Church Street Station
                                                    New York, NY 10008
                                                    Tel. 212-897-5821
                                                    Fax    212-897-5811

October 12, 2022
New York, New York